Robert SCOTT, Plaintiff,

v.

NEW UNITED MOTOR MANUFACTURING, INC., Defendants.

No. C–85–7422 RFP.

United States District Court, N.D. California.

Jan. 8, 1986.

892

Dan Siegel, Siegel, Friedman & Yee, Oakland, Cal., for plaintiff.

Robert T. Fries and Deborah Shefler, Steinhart & Falconer, San Francisco, Cal., for defendants.

## ORDER

PECKHAM, Chief Judge.

### INTRODUCTION

Defendant New United Motor Manufacturing, Inc., ("NUMMI") has moved to dismiss this removed action under rule 12(b)(6) or, in the alternative, for summary judgment under rule 56. Plaintiff Scott's complaint alleges five causes of action: (1) breach of contract and the covenant of good faith and fair dealing; (2) wrongful discharge in violation of public policy; (3) fraud; (4) intentional infliction of emotional distress; and (5) discrimination on the basis of race. The court held a hearing on defendant's motion on December 23, 1985. The court remands this case to the Superior Court for Alameda County and dismisses plaintiff's complaint to the extent that it alleges a Title VII claim.

### FACTS

On July 30, 1984, NUMMI hired Scott, a black male, to work at its automobile manufacturing plant in Fremont. General Motors had employed plaintiff for 23 years at its Fremont plant, entitling Scott to preferential treatment in hiring by NUMMI. As a NUMMI employee, Scott was a member of a bargaining unit represented by the United Auto Workers ("UAW"). The UAW had previously negotiated a collective bargaining agreement (the "Agreement") governing the terms and conditions of employment at the NUMMI plant.

NUMMI discharged Scott on September 27, 1984. At that time, he was a probationary employee under the terms of the Agreement. The Agreement provided that a probationary employee could not file any grievances; the grievance procedure was available only to employees that had completed probation.

On December 14, 1984, plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC found no reasonable cause to believe that NUMMI had discriminated against Scott in violation of Title VII and issued him a right to sue letter on March 12, 1985. Plaintiff received this letter two days later. In a letter dated December 12, 1984, the California Department of Fair Employment and Housing notified plaintiff of his right to sue under state law.

Plaintiff filed the present action in Superior Court for the County of Alameda on June 26, 1985, (104 days after receiving his right to sue letter from the EEOC) seeking $1 million in damages, interest, attorney's fees, and an unspecified amount of punitive damages. Plaintiff does not seek reinstatement. Under an agreement negotiated on plaintiff's behalf by the UAW, Scott was placed on NUMMI's payroll effective August 12, 1985, and given a leave of absence to administer a union program. Defendant removed the action to this court on October 8, 1985.

### DISCUSSION

Defendant argues that the court should find causes of action 1–4 preempted by federal law and that all five causes of action fail to state a claim for relief. Alternatively, defendant contends that the court should dismiss plaintiff's five common law claims as preempted by the California Fair Employment and Housing Act. Defendant

adds that plaintiff's five causes of action fail to state a claim for relief under state law. Plaintiff argues that each of his claims does state a cause of action under state law; moreover, plaintiff states "that this matter may have been improvidently removed from state court." Memorandum of Points and Authorities in Opposition to Dismissal or Summary Judgment at 1.

Defendant contends that this court has jurisdiction because section 301 of the Labor Management Relations Act preempts plaintiff's state law claims. The relevant portion of section 301 provides: "Suits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties...." 29 U.S.C. § 185(a) (1982). Section 301 is a "congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corporation v. Lueck,* —— U.S. ——, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985) (footnote omitted). While preemption is usually a defense, and thus does not provide the basis for removal jurisdiction, removal is appropriate if federal law, besides displacing state law, also confers a federal remedy on the plaintiff. *See, e.g., Harper v. San Diego Transit Corp.,* 764 F.2d 663, 666 (9th Cir.1985) (citing cases). "[T]he court held in [*Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v.*] *Lucas Flour* [369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) ] ... that a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Allis-Chalmers,* 105 S.Ct. at 1911. If plaintiff artfully pleads to avoid federal jurisdiction based on section 301, the claim is nevertheless preempted, and may be properly removed to federal court. *See, e.g., Harper,* 764 F.2d at 666–67.

The Supreme Court recently addressed the question of section 301 preemption of state law claims in *Allis-Chalmers v. Lueck,* —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In that case, an Allis-

Chalmers employee who was a member of the UAW brought a state court action against the company for the bad faith handling of his insurance claim. Allis-Chalmers and the UAW were parties to a collective bargaining agreement that contained a separately negotiated group health and disability plan. *Id.,* 105 S.Ct. at 1907. Lueck never attempted to grieve his dispute concerning the manner in which Allis-Chalmers and its insurance carrier handled his claim. *Id.* at 1908. The Court focused on the following question: "[w]hether the Wisconsin tort action for breach of the duty of good faith as applied here confers non-negotiable state law rights on employers or employees independent of any right established by contract, or instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 1912.

The Court held that section 301 preempted Wisconsin's tort action for breach of the duty of good faith in handling insurance claims. First, the Court found that the extent of the duty under Wisconsin law was "tightly bound with questions of contract interpretation that must be left to federal law." *Id.* at 1914. Second, a different result would undermine "the central role of arbitration in our 'system of industrial self-government.'" *Id.* at 1915 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)). "Perhaps the most harmful aspect of the Wisconsin decision [which the Court reversed] is that it would allow essentially the same suit to be brought directly in state court without first exhausting the grievance procedures established in the bargaining agreement." 105 S.Ct. at 1915.

The Court's stated rationales in *Allis-Chalmers* distinguish it from the present case. First, *Allis-Chalmers'* reliance on arbitration does not apply here. *Allis-Chalmers* sought to prevent an "end run around ... arbitration procedures." *Wheeler v. Furr's,* 620 F.Supp. 14, 16 (D.N. M.1985). *See also Marine Transport Lines, Inc. v. International Organization of Masters,* 609 F.Supp. 282, 287 (S.D.N.Y. 1985) ("It was precisely the need to main-

tain the effectiveness of arbitration that prompted the Court in *Lueck* to find that a derivative tort claim was preempted by federal law under Section 301 where the collective bargaining agreement implied the same rights and obligations as would the derivative tort.") (footnote omitted). In this case, plaintiff, as a probationary employee, did not have access to grievance procedures.

Second, section 301 preempts state tort actions and provides a basis for federal jurisdiction precisely because collective bargaining agreements provide the alternative and exclusive remedy of arbitration. *See Allis-Chalmers*, 105 S.Ct. at 1915. *See also Lumber Production Industrial Workers Local No. 1054 v. West Coast Industrial Relations Association, Inc.*, 775 F.2d 1042, 1046 (9th Cir.1985); *Lancaster v. Norfolk and Western Railway Company*, 773 F.2d 807, 816 (7th Cir.1985). The collective bargaining agreement in this instance provided plaintiff with no remedy at all. It would be anomolous to hold that section 301 preempts his state remedies because federal law provides the exclusive remedy, only then to discover that plaintiff had no remedies under federal law. *Cf. Hechler v. International Brotherhood of Electrical Workers, Local 759*, 772 F.2d 788, 794 (11th Cir.1985) (distinguishing tort suit against Union from *Allis-Chalmers* because "[n]either the collective bargaining agreement nor § 301 provides a remedy").

Third, the Ninth Circuit, in discussing *Allis-Chalmers*, implied in dictum that section 301 would not preempt a state wrongful termination action by a union member not protected by a just cause or good cause provision. *Harper v. San Diego Transit*, 764 F.2d 663, 667–69 (9th Cir.1985). In *Harper*, plaintiff, who was protected by a collective bargaining agreement that required good cause for his dismissal, alleged that his termination breached his labor contract's duty of good faith and fair dealing. *Id.* at 668. The court stated that "it is unnecessary to address whether state law confers nonnegotiable rights on employees" because "[t]here is no indication that the 'good cause' provision of his contract provided any less protection than California

wrongful termination law." *Id.* Therefore, section 301 preempted Harper's claim. Nevertheless, the court pointed out that the Ninth Circuit has "never found the state tort protection waivable or negotiable," adding that "decisions finding preemption and removal jurisdiction seem to assume that the collective bargaining agreement actually provided the protections that plaintiff sought." *Id.*

Fourth, adopting defendant's position would permit unions to bargain away the rights that nonunion members may now have under California law. Union members protected by a "good cause" provision and, potentially, individuals that do not belong to a union, would have access to legal remedies if they were discharged without cause; individuals in plaintiff's position would have no recourse if the court adopted defendant's position. *Cf. Metropolitan Life Insurance Co. v. Massachusetts*, —— U.S. ——, 105 S.Ct. 2380, 2398, 85 L.Ed.2d 728 (1985) ("It would turn the policy that animated the Wagner Act on its head to understand it to have penalized workers who have chosen to join a union by preventing them from benefitting from state labor regulations imposing minimal standards on non-union employers.").

Finally, the Supreme Court emphasized the narrowness of its holding in *Allis-Chalmers*. "It is perhaps worth emphasizing the narrow focus of the conclusion we reach today.... [W]e [do not] hold that every state-law suit asserting a right that relates in some way to a provision in a collective bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by § 301. The full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis." 105 S.Ct. at 1916.

■ No other aspect of plaintiff's complaint states a ground for jurisdiction over this action. While it may be true that certain of plaintiff's causes of action are preempted by the primary jurisdiction of the NLRB, that is a question of defense, which does not create federal jurisdiction. Even cause of action five, which alleges

race discrimination, does not create federal jurisdiction since plaintiff did not file his complaint within 90 days of receiving his right to sue letter, a jurisdictional requirement of the statute. *See Wong v. Bon Marche,* 508 F.2d 1249 (9th Cir.1975).

Finally, the court notes that this case seems well suited to resolution outside the courtroom. Defendant has already reinstated plaintiff to its payroll, reducing the differences between the parties and indicating a desire by both parties to maintain a relationship. Parties frequently resolve this type of employment dispute through arbitration or mediation, which are less formal and costly than full scale litigation.

Accordingly, the court remands plaintiff's action to the Superior Court for Alameda Conty. The court dismisses plaintiff's claims to the extent they allege an action under Title VII.

IT IS SO ORDERED.