Ruth L. YOUNG, Plaintiff-Appellant,

v.

ANTHONY'S FISH GROTTOS, INC.; Anthony's Fish Grotto of La Jolla; Anthony's Fish Grotto of La Mesa, Inc.; and Ida Tagliaferri, Defendants-Appellees.

No. 87-5505.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 1987.

Decided Oct. 15, 1987.

David A. Niddrie, San Diego, Cal., for plaintiff-appellant.

Gregg C. Sindici, San Diego, Cal., for defendants-appellees.

Before WIGGINS and O'SCANNLAIN, Circuit Judges, and MARQUEZ,* District Judge.

WIGGINS, Circuit Judge:

Ruth Young appeals the district court's assumption of removal jurisdiction and its subsequent grant of summary judgment in favor of Anthony's Fish Grottos, Inc., related companies, and Ida Tagliaferri (collectively Anthony's) of Young's breach of contract and wrongful discharge claims. We affirm.

---

* Honorable Alfredo C. Marquez, United States District Judge, District of Arizona, sitting by designation.

## I.

### BACKGROUND

Young began working for Anthony's in 1974. In 1980 she organized employees in protest of an IRS audit of their tip income. In 1983 she quit. In April 1985 she agreed to return to work for Anthony's as a waitress. She alleges a manager promised to employ her on the same terms as before, subject to discharge only for just cause. She reported to work on May 15 and was fired the same day.

The collective bargaining agreement (CBA) between Young's union and Anthony's classifies the waitress position as within the collective bargaining unit. Under the CBA an employee is on probation during the first thirty days of work and can be discharged at Anthony's sole discretion. More senior employees can be discharged only for just cause.

Young sued Anthony's in California court for breach of contract, wrongful discharge, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, and intentional and negligent infliction of mental distress. She alleged that Anthony's fired her in violation of California public policy for organizing the IRS tip audit protest and that her discharge was in breach of an oral employment contract. Her complaint did not mention the CBA. Anthony's removed the case to federal court alleging that Young's state law claims were artfully pled claims for breach of the CBA under section 301 of the Labor Management Relations Act (section 301), 29 U.S.C. § 185 (1982). Young moved to remand to state court for improper removal because as a probationary employee she had no effective remedy under the CBA. The court denied the motion. Anthony's then moved for summary judgment on the grounds that (1) Young's state claims were preempted by section 301 and (2) her failure to exhaust the CBA's grievance procedure or to timely file the section 301 claim barred the action. The court agreed and Young timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

### STANDARD OF REVIEW

We review the denial of a motion to remand an action to state court for want of removal jurisdiction de novo. *Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 930 (9th Cir.1986), *aff'd, Caterpillar, Inc. v. Williams,* — U.S. —, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). We also review the grant of a motion for summary judgment de novo and will affirm only if, viewing the evidence in the light most favorable to the party opposing the motion, there are no genuine questions of fact and the trial court correctly applied the substantive law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

## III.

### REMOVAL JURISDICTION

Under 28 U.S.C. § 1441(a), a defendant may remove to federal court a civil action "brought in a State court of which the district courts of the United States have original jurisdiction." The Supreme Court has recently described the criteria for removal under section 1441:

> Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

*Caterpillar, Inc. v. Williams,* 107 S.Ct. at 2429 (citations and footnotes omitted). A state action cannot be removed to federal court based on a federal defense, even that of preemption, *id.* at 2430, but it can be removed if "completely preempted": the "preemptive force of a statute [may be] so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stat-

ing a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor,* —— U.S. ——, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). If a federal claim completely preempts a state claim, a complaint coming within the scope of the federal claim necessarily arises under federal law and is removable. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23–24, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983).

■ Even when federal law preempts state law, a state law claim may not be removed unless federal law also supplants it with a federal claim. *Hunter v. United Van Lines,* 746 F.2d 635, 640–43 (9th Cir. 1984), *cert. denied,* 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985); *see Franchise Tax,* 463 U.S. at 22–27, 103 S.Ct. at 2853–57 (rejecting removal jurisdiction over a state law claim raising on its face an issue of preemption under the Employee Retirement Income Security Act of 1974 (ERISA) because "ERISA does not provide an alternative cause of action in favor of the [plaintiff] to enforce its rights"). The federal claim requirement arises from the limitations on removal jurisdiction contained in 28 U.S.C. § 1441. If the plaintiff could not have asserted a federal claim based on the allegations of her state law complaint, she could not have brought the case originally in federal court as required for removal jurisdiction under section 1441. *Hunter,* 746 F.2d at 640–43. In that case, preemption would be merely asserted as a defense. *Id.* Thus, to remove a state law claim to federal court under the complete preemption doctrine, federal law must both completely preempt the state law claim and supplant it with a federal claim.

### A. Complete Preemption Jurisdiction over Contract Claim

Young's complaint alleges breach of an oral employment contract made in connection with her reinstatement. Her complaint does not reveal that her employment is governed by a collective bargaining agreement. The district court, however, properly looked beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement "artfully pleaded" to avoid federal jurisdiction. *Paige v. Henry J. Kaiser Co.,* 826 F.2d 857, 860–61 (9th Cir.1987); *Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468, 1473 (9th Cir.1984).

■ Section 301(a) provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a) (1982). A suit for breach of a collective bargaining agreement is governed exclusively by federal law under section 301. *Franchise Tax,* 463 U.S. at 23, 103 S.Ct. at 2853–54. The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, *id.,* and any state claim whose outcome depends on analysis of the terms of the agreement, *IBEW v. Hechler,* —— U.S. ——, 107 S.Ct. 2161, 2166, 95 L.Ed.2d 791 (1987); *Stallcop v. Kaiser Foundation Hosps.,* 820 F.2d 1044, 1048 (9th Cir.1987).

■ Young contends that her individual labor contract is independent of the CBA and that her contract claim is thus not a claim for breach of the CBA. The subject matter of her contract, however, is a job position covered by the CBA. Because any "independent agreement of employment [concerning that job position] could be effective only as part of the collective bargaining agreement," the CBA controls and the contract claim is preempted. *Olguin,* 740 F.2d at 1474; *accord Stallcop,* 820 F.2d at 1048; *Bale v. General Tel. Co.,* 795 F.2d 775, 779–80 (9th Cir.1986).[1] By way

---

1. Young cites *Anderson v. Ford Motor Co.,* 803 F.2d 953, 957–59 (8th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987), in which the Eighth Circuit held that a claim for breach of an individual contract does not arise out of a collective bargaining agreement even when the job position at issue falls within the collective agreement. The Eighth Circuit rejected our view in *Bale,* 795 F.2d at 780, that such an individual contract requires analysis of the collective agreement and so arises under it. *Anderson,* 803 F.2d at 959. No later Supreme Court decision has undermined our analysis in *Bale* and we are therefore not at liberty to

of contrast, a breach of contract claim concerning a job not governed by a collective agreement could be effective independent of the agreement and is therefore not completely preempted. *Caterpillar, Inc. v. Williams,* 107 S.Ct. at 2430–32 & 2431 n. 9 ("[plaintiffs] rely on contractual agreements made while they were in managerial or weekly salaried positions—agreements in which the collective-bargaining agreement played no part"). Young's individual contract claim is thus effectively a claim for breach of the CBA.

Young argues that it would be contrary to Congress' intent in enacting section 301 to hold preempted her state law contract claim when under the CBA she could be discharged at will. *See Paige,* 826 F.2d at 860–61 (essential inquiry in determining preemption is intent of Congress in enacting federal statute). Federal law, however, recognizes that a union may, in the give and take of collective bargaining, waive the employee's contractual rights. *NLRB v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 180, 87 S.Ct. 2001, 2006, 18 L.Ed.2d 1123 (1967); *Hollins v. Kaiser Found. Hosps.,* 727 F.2d 823, 825 (9th Cir. 1984) (per curiam). Preemption of Young's contract claim accordingly conforms to federal law.

Federal law not only preempts Young's contract claim, but also supplants it with a federal claim. Young's individual labor contract is only enforceable under the CBA. *J.I. Case Co. v. NLRB,* 321 U.S. 332, 339, 64 S.Ct. 576, 581, 88 L.Ed. 762 (1944); *Olguin,* 740 F.2d at 1474. Young could have brought a grievance under the CBA to determine the effectiveness of her individual contract, and a federal court would therefore have jurisdiction pursuant to section 301 over her claim for breach of the CBA based on that individual contract.

Her contract claim can thus be characterized as a section 301 claim and removed as completely preempted.[2]

Young argues that she had no effective federal remedy under the CBA because she could be discharged at will, and so removal jurisdiction is absent. She relies on language in our opinion in *Williams v. Caterpillar Tractor Co.* that a state law claim may be removed as completely preempted if "federal law provides ... a superseding *remedy* replacing the state law cause of action." 786 F.2d at 932 (emphasis added). The Supreme Court rejected our suggestion that "the federal cause of action relied upon provide[ ] the plaintiff with a remedy" as inconsistent with *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). *Caterpillar, Inc. v. Williams,* 107 S.Ct. at 2429 n. 4. *Avco* held a state law claim for breach of a collective bargaining agreement removable as a preempted section 301 claim even though the relief the plaintiff sought—a strike injunction—could not then be obtained in federal court. *Avco,* 390 U.S. at 560, 88 S.Ct. at 1237; *see Franchise Tax,* 463 U.S. at 22–24, 103 S.Ct. at 2853–54. " 'The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy.' " *Caterpillar, Inc. v. Williams,* 107 S.Ct. at 2429 n. 4 (quoting *Avco,* 390 U.S. at 561, 88 S.Ct. at 1237–38). Thus, if federal law completely preempts a state law claim and supplants it with a federal claim, the state law claim may be removed to federal court even if federal law fails to provide the plaintiff with remedies available under state law, *Avco,* 390 U.S. at 560–61, 88 S.Ct. at 1237–38, or a federal defense completely bars the federal

reexamine that precedent without convening an en banc panel. *Le Vick v. Skaggs Cos.,* 701 F.2d 777, 778 (9th Cir.1983) (panel of court can, without convening en banc panel, overrule decision of another panel undermined by later Supreme Court decisions).

**2.** Discharged employees who lack access to the grievance procedure under the collective bar-

gaining agreement cannot state a claim for breach of the collective agreement, and federal courts therefore lack jurisdiction over their section 301 claims. *Hollins,* 727 F.2d at 825. We express no opinion whether removal jurisdiction would exist over such employees' state contract claims absent a superseding federal claim.

claim. *See, e.g., Olguin,* 740 F.2d at 1476 (state law claim removable as preempted section 301 claim even though plaintiff's failure to exhaust contractual grievance procedure barred the section 301 claim). Consequently, the fact that Young's probationary status might ultimately bar an effective remedy under the CBA does not defeat federal jurisdiction.

We conclude that Young's individual contract claim is completely preempted and supplanted by a federal claim for breach of the CBA under section 301. The district court thus properly characterized the state law contract claim as a section 301 claim and assumed removal jurisdiction on that basis.

### B. *Jurisdiction over Tort Claims*

■ Young's complaint also alleges various state tort claims. We need not decide whether jurisdiction exists independently over these claims. The district court could properly exercise pendent jurisdiction over the tort claims based on their close relation with the section 301 claim, the economy of hearing all claims arising out of the discharge in the same action, and the significant federal interest in deciding the preemption defense to the tort claims. *Bale,* 795 F.2d at 778. We therefore evaluate whether the tort claims are preempted by section 301 without deciding whether they are independently removable.

### IV.

### PREEMPTION OF STATE TORT CLAIMS

Young argues that her tort claims are not preempted by section 301 because they are independent of the CBA. The leading case analyzing section 301 preemption of state tort claims is *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The Court indicated that parties cannot escape the preemptive effect of section 301 by recasting their contract claims as tort claims. *Id.* at 210–

11, 105 S.Ct. at 1910–11. The key to determining the scope of preemption is not how the complaint is cast, but whether the claims can be resolved only by referring to the terms of the collective bargaining agreement. *Id.* at 211, 105 S.Ct. at 1911. A contrary result would frustrate the federal interest in uniform federal interpretation of collective agreements, allowing "parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." *Id.* Section 301 does not, however, preempt every employment dispute tangentially involving a collective bargaining agreement; for example, state rules establishing rights independent of a labor contract are not preempted. *Id.* at 211–12, 105 S.Ct. at 1911–12. The test for preemption of a tort claim is whether the state "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213, 105 S.Ct. at 1912.

### A. *Implied Covenant of Good Faith and Fair Dealing*

Young alleges breach of an implied covenant of good faith and fair dealing under *Cleary v. American Airlines,* 111 Cal. App.3d 443, 168 Cal.Rptr. 722 (1980). The implied covenant tort is designed to protect the job security of employees who at common law could be fired at will. *Garibaldi v. Lucky Food Stores,* 726 F.2d 1367, 1373 n. 9, 1374, & 1374–75 n. 11 (9th Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985). Generally, no comparable lack of job security exists for unionized employees. *Id.* at 1374–75 n. 11. Thus section 301 preempts the implied covenant when an employee has comparable job security under a collective bargaining agreement. *Olguin,* 740 F.2d at 1474 ("The agreement provides the same or greater protection of job security that state tort law seeks to provide for nonunionized

employees; accordingly federal law preempts state law"); *accord Stallcop,* 820 F.2d at 1049 (employee had guarantee of discipline only for just cause under collective agreement); *Harper v. San Diego Transit Corp.,* 764 F.2d 663, 668 (9th Cir. 1985) (implied covenant claim preempted because "[t]here is no indication that the 'good cause' provision of [the plaintiff's] contract provided any less protection than California wrongful termination law").

In all the cases in our circuit in which we found section 301 to preempt an employee's implied covenant tort claim, the collective bargaining agreement provided comparable job security. We have therefore never found that the union could waive or negotiate away an employee's state tort protection of job security. *See Harper,* 764 F.2d at 668 (as contract provided job security, it was unnecessary to decide whether state law conferred nonnegotiable job security protection). Since the CBA permitted Anthony's to discharge probationary employees such as Young at will, we must now decide whether Young's union could waive her state tort protection of job security.

The court in *Scott v. New United Motor Mfg., Inc.,* 632 F.Supp. 891 (N.D.Cal.1986) (per Peckham, C.J.), held that section 301 did not preempt a probationary employee's California tort claims. The court reasoned that holding a probationary employee's state tort claim preempted:

> would permit unions to bargain away the rights that nonunion members may now have under California law. Union members protected by a 'good cause' provision and, potentially, individuals that do not belong to a union, would have access to legal remedies if they were discharged without cause; individuals in plaintiff's position would have no recourse....

*Id.* at 894. The court suggested that it would " 'turn the policy that animated the

[National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–169] on its head to understand it to have penalized workers who have chosen to join a union by preventing them from benefiting from state labor regulations imposing minimal standards on non-union employers.' " *Id.* (quoting *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 756, 105 S.Ct. 2380, 2398, 85 L.Ed.2d 728 (1985)) [3]; *see also* Comment, *NLRA Preemption of State Wrongful Discharge Claims,* 34 Hast.L.J. 635, 637–38 (1983) (hereinafter *NLRA Preemption* ) (California "law grants the employee a substantive right not to be discharged which is independent of the collective agreement and which his or her union arguably may not waive"). Although the *Scott* court has raised significant arguments against waiver of the implied covenant, we find them to be outweighed by the federal labor policies underlying section 301.

The implied covenant tort is a "regulation of the employment relationship." *Garibaldi,* 726 F.2d at 1374. It implicates the employee's job security rights under the collective bargaining agreement and duplicates the protection federal labor policy posits in the collective bargaining process. It furthers no state policy independent of employment. *Cf. id.* at 1373–75 ("whistle-blower" wrongful discharge tort designed to protect health and safety of state's citizens transcends the employment relationship and is not preempted). Consequently, the implied covenant is " 'inextricably intertwined with consideration of the terms of the labor contract,' " *Harper,* 764 F.2d at 668 (quoting *Allis-Chalmers,* 471 U.S. at 213, 105 S.Ct. at 1912), not bound up with independent state policies, and should therefore be subject to waiver. *See NLRA Preemption,* 34 Hast.L.J. at 660 (California's implied covenant tort claim "accommodates the very interest that the NLRA accommodates through the collective bargaining process.

---

**3.** The *Scott* case is in one aspect distinguishable. The probationary employee had no access to the collective agreement's grievance procedure. 632 F.Supp. at 892. Consequently he had no section 301 claim available, *see Hollins,* 727 F.2d at 825, and federal removal jurisdiction was arguably lacking, *see Scott,* 632 F.Supp. at 894. Young had access to the grievance procedure and could have asserted her contract claims through a section 301 action.

The NLRA establishes a system in which the individual employment contract is superseded by the collective bargaining agreement. Such state law wrongful discharge actions should therefore be preempted.") (footnotes omitted).

Further, section 301 preempts any individual labor contract inconsistent with a collective bargaining agreement in order to assure uniform federal interpretation of the collective agreement. *Allis-Chalmers*, 471 U.S. at 211, 105 S.Ct. at 1911. Permitting parties to recast their contract claims as implied covenant tort claims "would allow [them] to evade the requirements of § 301." *Id.*

 Finally, a union can waive probationary employees' contractual job security rights obtaining, in exchange, job security for more senior employees. *Hollins*, 727 F.2d at 825. A union should accordingly also be able to waive the implied covenant's quasi-contractual guarantee of job protection. *See Trumbauer v. Group Health Coop.*, 635 F.Supp. 543, 547 (W.D. Wash.1986) (section 301 preempts probationary employee's implied covenant claim because the covenant is an aspect of the collective agreement and is subject to waiver). Precluding waiver of the implied covenant might lead to an incongruous result. Discharged probationary employees could seek recovery of emotional distress and other compensatory damages, as well as punitive damages, for breach of the implied covenant. Other employees—subject to discharge only for good cause under a collective bargaining agreement—would be limited to their contractual remedies. Probationary employees might therefore effectively enjoy greater job security than their more senior coworkers.

We accordingly hold that a union can waive the right of a probationary employee to the protection of California's implied covenant tort. Since Young was covered by the CBA, her implied covenant claim was preempted by section 301 even though she may have no comparable employment protection under the CBA.

## B. *Fraud and Misrepresentation*

 Young urges that her state tort claims for fraud and negligent misrepresentation do not arise from interpretation of the CBA, but rather from oral representations made in connection with her reinstatement. She alleges that Anthony's falsely represented that she could be discharged only for good cause. As in *Allis-Chalmers*, however, determining Young's misrepresentation claims would require interpretation of the collective agreement. In order to prove misrepresentation, Young would be required to show that the terms of the CBA differed significantly from the terms of the individual contract. As resolution of her misrepresentation claims would substantially depend on interpretation of the terms of the CBA, the claims are preempted. *Stallcop*, 820 F.2d at 1049; *Bale*, 795 F.2d at 779–80

## C. *Wrongful Discharge in Violation of Public Policy*

Young alleges a claim for wrongful termination in violation of public policy under *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980). She claims that her discharge was contrary to a California public policy protecting her efforts to organize Anthony's employees in opposition to an IRS tip audit.

 Section 301 does not preempt every public policy claim brought by an employee covered by a collective bargaining agreement. Thus, a claim is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship. *Garibaldi*, 726 F.2d at 1373–75 (claim based upon a state "whistle-blower" statute designed to protect public health and safety not preempted); *accord Paige*, 826 F.2d at 863 (claim based on state statute protecting workers' health and safety not preempted because state law benefits employees "as individual workers, not because they are or are not [union] mem-

bers"). A claim is preempted, however, if it is not based on any genuine state public policy, *DeSoto v. Yellow Freight Sys.*, 820 F.2d 1434, 1437–38 (9th Cir.1987) (claim based on good faith but erroneous reliance on a state registration statute preempted), or if it is bound up with interpretation of the collective bargaining agreement and furthers no state policy independent of the employment relationship, *Evangelista v. Inlandboatmen's Union*, 777 F.2d 1390, 1401 (9th Cir.1985) (claim based on public policy against harassment on the job preempted). Otherwise, virtually any wrongful discharge claim could be recast as a public policy claim exempt from preemption. *Id.*

Young fails to identify any state statute or other relevant public policy of California protecting opposition to IRS tax audits. Because no state public policy transcending the employment relationship protects her actions, her wrongful termination claim is preempted.

#### D. *Emotional Distress Claims*

 Young's complaint alleges intentional and negligent infliction of emotional distress due to her discharge. The claims arise out of the same conduct which formed the basis of her contract claim. As resolution of the claims is inextricably intertwined with the interpretation of the CBA, they are preempted. *Stallcop*, 820 F.2d at 1049; *Truex v. Garrett Freightlines*, 784 F.2d 1347, 1350 (9th Cir.1985); *Olguin*, 740 F.2d at 1476; *cf. Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d 536, 539 (9th Cir.1987) (emotional distress claims not preempted because they arose from conduct not covered by the collective agreement); *Garibaldi*, 726 F.2d at 1369 n. 4 (emotional distress claim arising from de-

fendant's retaliation for plaintiff's report of spoiled milk to health authorities not preempted because conduct not covered by the collective agreement).

## V.

### SUMMARY JUDGMENT

The district court held that Young was barred from asserting her section 301 claim for her failure to exhaust the grievance procedure or to assert her claim within the statute of limitations period. Young does not contest that conclusion and summary judgment of the section 301 claim was accordingly proper. Summary judgment of the remaining tort claims was proper because they are preempted.

## VI.

The district court properly assumed removal jurisdiction over the contract claim based on complete preemption and over the tort claims based on pendent jurisdiction. Section 301 preempts the implied covenant tort claim even if the CBA does not confer upon probationary employees such as Young comparable job security. The remaining tort claims are also preempted, and summary judgment is AFFIRMED.