**Burnett C. WALTON, Plaintiff,**

v.

**UTV OF SAN FRANCISCO, INC., et al., Defendants.**

Nos. C–90–3214–VRW, C–90–0171–VRW.

United States District Court, N.D. California.

Nov. 1, 1991.

Curtis G. Oler, Creighton Oler, Craig R. Lewis, Oler & Oler, San Francisco, Cal., for plaintiff.

Gordon E. Krischer, F. Curt Kirschner, Jr., Blake P. Loebs, O'Melveny & Myers, San Francisco, Cal., for defendants.

ORDER

WALKER, District Judge.

This employment discrimination action was filed on February 7, 1990, and assigned case number C–90–0171–VRW ("Walton I"). As the action involved both state and federal claims, the court had to determine whether it should exercise pendent (now called supplemental) jurisdiction over the state law claims. On August 14, 1990, after requesting argument and hearing, the court issued an order declining to

exercise jurisdiction over the state law claims, dismissing these without prejudice.

Plaintiff refiled this matter in the San Francisco Superior Court on November 2, 1990, not only alleging violations of the California Fair Employment and Housing Act (FEHA), Cal.Gov't Code §§ 12900 *et seq.*, but also including the claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, that was still before this court. Plaintiff added state causes of action for fraud and misrepresentation to his complaint.

Defendants removed plaintiff's complaint to this court on November 9, 1990 pursuant to 28 U.S.C. § 1446(a), based on federal question jurisdiction, 28 U.S.C. §§ 1331, 1441. This complaint was assigned case number C–90–3214–VRW ("Walton II"). On November 19, 1990, plaintiff filed with this court a voluntary dismissal of his Title VII claim in Walton I, noting that he had filed his Title VII claim in state court. This dismissal was entered in the civil docket on November 21, 1990, and that case was closed. This state of affairs is now before the court for sorting out.

## I. CAN DEFENDANTS REMOVE BASED ON A FEDERAL CLAIM ALREADY PENDING IN THIS COURT?

■ Well established federal and California law forbid plaintiff from splitting a single claim for relief against defendants by making it the subject of more than one action in the same court. *Bienville Water Supply Co. v. Mobile*, 186 U.S. 212, 22 S.Ct. 820, 46 L.Ed. 1132 (1902); *Wulfjen v. Dolton*, 24 Cal.2d 878, 891, 151 P.2d 840, 846 (1944). This does not forbid a plaintiff from proceeding on the same cause of action in two different courts of concurrent jurisdiction at the same time, if jurisdiction is in personam. *Kline v. Burke Construction Co.*, 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922); *Donovan v. City of Dallas*, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1963); *Princess Lida v. Thompson*, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939); *Fowler v. Ross*, 142 Cal. App.3d 472, 191 Cal.Rptr. 183 (1983).

■ Once a final judgment is rendered in one of the parallel proceedings, the defendant can then plead the res judicata effect in the other action, serving as a merger or bar. An exception to this rule in California allows a party to proceed upon different legal theories in different courts under certain circumstances subject only to collateral estoppel. *Mattson v. City of Costa Mesa*, 106 Cal.App.3d 441, 164 Cal.Rptr. 913 (1980); *Craig v. County of Los Angeles*, 221 Cal.App.3d 1294, 271 Cal.Rptr. 82 (1990). In a case such as Walton II, where plaintiff brings state law claims in state court once a federal court has declined to exercise supplemental jurisdiction over the claims in an arguably related federal action, one of the grounds for this exception, defendant's consent, is likely to be found. Defendants can avoid the splitting of the action by stipulating to a dismissal without prejudice of the Title VII claims in Walton I and hearing the entire action in state court. *Mattson* at 450, 164 Cal.Rptr. at 919.

Plaintiff appears to have the right to file the entire action, including the duplicative federal claim, in the state court. The question here is whether the removal of Walton II is proper, when removal is based on a federal claim that is already before this court. Because that question may be moot if there are other grounds for federal jurisdiction, the court turns to that issue.

### A. *The Fraud and Misrepresentation Claims*

In addition to the duplicative Title VII claim, defendants also assert as a basis for removal that this court has original jurisdiction over the fraud and misrepresentation claims by virtue of the "complete preemption" doctrine and § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("§ 301"). Plaintiff bases his fraud and misrepresentation claims on alleged promises made by defendants that plaintiff could be fired only for "good cause." Defendants assert that this promise is either the "just cause" provision in the Collective Bargaining Agreement ("CBA"), or, if an independent agreement,

requires interpretation of the "just cause" clause of the CBA.

The appropriate tests for application of the "complete preemption" doctrine are found in the Supreme Court opinions *Caterpillar v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), and *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). To be preempted by § 301, and thereby converted into federal actions, state claims must fall into one of two categories: claims substantially *dependent* on *interpretive analysis* of the CBA, or claims based on rights *created* by the CBA.

The court finds none of the Ninth Circuit cases cited by defendants in support of their position on point. Some of the cases involved rights that were *implied* by the common law, not based on any independent agreements, and displaced by provisions in the CBA. *See, e.g., Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142 (9th Cir.1988). One case, *DeLapp v. Continental Can Co.,* 868 F.2d 1073 (9th Cir.1989), involved an independent agreement that referenced a specific right *created* by the CBA.

A few of the Ninth Circuit cases cited by defendants turned on a quote taken out of context from *Olguin v. Inspiration Consolidated Copper Co.,* 740 F.2d 1468 (9th Cir.1984). The reason why "any independent agreement of employment could be effective only as part of the collective bargaining agreement" in *Olguin* was because the CBA in question *expressly* provided that it was the sole agreement between the employer and employees. *Id.* at 1474. The court is aware of no such provision in the CBA involved in this case. Defendants cite § 20.1 of the CBA, which does not mention individual employees and, according to plaintiff, is merely the integration clause covering agreements between the employer and the union.

Despite the absence of a "sole agreement" provision, the Ninth Circuit in both *Stallcop v. Kaiser Foundation Hospitals,* 820 F.2d 1044 (9th Cir.1987) and *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993 (9th Cir.1987), applied the *Olguin* language quoted above to perform a sort of judicial alchemy, turning independent agreements into ones dependent upon a CBA, and thus subject to § 301 preemption.

*Young* was decided after *Caterpillar,* although the *Young* holding would render moot the analysis mandated by the Supreme Court. A court would rarely have to determine whether a right is created by a CBA or depends substantially on the analysis of a CBA, if all independent employer-employee agreements are deemed to be "effective only as a part of" the CBA. *Young* would effectively wipe out a line of Supreme Court cases, dating back to *J.I. Case Co. v. Labor Board,* 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944), upholding individual contracts between an employee and an employer that were not inconsistent with a CBA. Since *Young* was decided, the Supreme Court's *Lingle* decision has emphasized the Court's intention that interpretation of a CBA must be *required* in a state cause of action for that action to be preempted by § 301.

Two post-*Lingle* cases strongly persuade this court that the fraud and misrepresentation claims are not preempted by § 301. In *DeLapp,* supra, the Ninth Circuit affirmed the district court's determination of a fraud claim on the merits notwithstanding the fact that the action for breach of the underlying contract was preempted by § 301. 868 F.2d at 1076. In *Operating Engineers Pension Trust v. Wilson,* 915 F.2d 535 (9th Cir.1990), § 301 did not preempt a fraudulent inducement claim concerning the CBA *itself.* Thus, even if plaintiff's claims were based on the CBA, § 301 would not convert them into federal actions.

■ The analysis required by the Supreme Court leads the court to conclude that the fraud and misrepresentation claims are not subject to the "complete preemption" doctrine and cannot afford the basis for removal of Walton II. The claims are not based on specific rights created by a CBA, and interpretation of a CBA is not required. If plaintiff can prove the existence of an independent agreement that he only be fired for "good cause," the existence of the generic term "just cause" in the

CBA is either irrelevant or requires no flexing of interpretive muscles by any court.

■ On the other hand, even if the "good cause" agreement alleged by plaintiff were merely the "just cause" provision of the CBA, an action for fraud or misrepresentation in connection with the CBA is not preempted, under the *Wilson* reasoning. The rights to be free from fraud and misrepresentation are not created nor displaced by any CBA provision, but must by nature precede any agreement that can be the subject of the action. Nor does vindication of these rights require any interpretive analysis of a CBA.

With that ground of removal cut away, the issue is whether the duplicative Title VII claim afforded a basis for removal.

### B. *The Title VII Claim*

Plaintiff did not attempt to dismiss his federal cause of action in Walton I until after Walton II was removed to this court. If Walton II had come to this court by plaintiff initiating a second complaint rather than defendant's removal, there is no question that the duplicative cause of action would be a prime candidate for a plea in abatement. *United States v. The Haytian Republic,* 154 U.S. 118, 123–24, 14 S.Ct. 992, 993, 38 L.Ed. 930 (1894); *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 715, 20 L.Ed. 666 (1872); *Commerce Oil Refining Corp. v. Miner,* 303 F.2d 125, 127 (1st Cir.1962); *Sutcliffe Storage & Warehouse Co. v. United States,* 162 F.2d 849, 851 (1st Cir.1947). Walton II's arrival via removal should not change things since defendants cannot seriously contend that by "removing" the Title VII claim to federal court they sought to place themselves twice at risk in the same court for the same claim.

■ By "removing" the Title VII claim to this court, defendants were bringing no new business on that claim before the court. Defendants were merely seeking to prevent the state court from acting on the claim, to preserve their right to a federal forum for a federal claim. Defendants' proper remedy was to request that the state court stay the Title VII claim in Walton II. *Clark's Fork Reclamation Dist. v. Johns,* 259 Cal.App.2d 366, 66 Cal.Rptr. 370 (1968).

This conclusion is supported by practical considerations. Any other course of action would permit an endless series of filings and removals, defeating both this court's determination of its supplemental jurisdiction and the state courts' ability to deal with the claims properly before them. By securing a stay, defendants would be in a position to ward off refilings of the federal claim in the state court by way of demurrer, Cal.Code Civ.Proc. §§ 430.10(c), 430.30, thereby breaking the infinite loop.

There is a possibility that under these circumstances the state court would deny a stay. It does not follow that defendants would be prejudiced. The federal proceeding should conclude first, ensuring defendants' choice of a federal forum. This is likely to happen in our case because Walton I is unencumbered by the state claims and the corresponding right to a jury trial that plaintiff invoked in Walton II.

Also, given the predominance of the state claims, the presence of the federal claim in Walton II hardly increases plaintiff's incentive to race to judgment on the federal claim in the state court.

Even if the federal claim were litigated in state court, however, we cannot presume that the state forum is incapable of fairly deciding that claim. If it were, Congress would have vested exclusive jurisdiction in the federal courts. Inability of the state courts fairly to adjudicate federal claims would demand a sturdier statutory remedy than the removal right, which is waivable and has a very short shelf-life.

And finally, even were the parties intent on racing to judgment in their preferred forums, this may not necessarily be a bad thing. Competition between courts of concurrent jurisdiction could possibly result in efficiencies that outweigh, or at least offset, the inefficiencies of duplication.

■ The duplicate Title VII claim filed in Walton II should, for purposes of sorting out the federal-state jurisdictional ques-

tions, be deemed a nullity, as the claim is already contained in the vessel of Walton I. Since no other claim in Walton II fell within this court's original jurisdiction, there was no basis for its removal. 28 U.S.C. § 1441(a). Accordingly, plaintiff's motion for remand is GRANTED.

## II. WAS THE TITLE VII CLAIM IN WALTON I PROPERLY DISMISSED?

■ In the Order of August 14, 1990, the court directed counsel for plaintiff "to submit a stipulated voluntary dismissal of the Title VII claim pursuant to Fed.R.Civ.P. 41(a)(1) if he intends to abandon his Title VII claim or refiles it in state court." Plaintiff filed a "Voluntary Dismissal" on November 19, 1990, which was entered in the civil docket two days later, closing the case.

Under Fed.R.Civ.P. 41(a)(1), a plaintiff may not dismiss an action without court order, and without stipulation by the other parties, if "service by the adverse party of an answer or of a motion for summary judgment" has already occurred. Defendants had a motion for summary judgment before this court when plaintiff's Voluntary Dismissal was filed, requiring either a stipulation by defendants or an order of the court to dismiss the case. Accordingly this case was never properly closed, and is now RE–OPENED.

The court sets a hearing date of December 6, 1991, at 10:30 a.m., to consider defendants' summary judgment motions. Counsel for the parties are directed to follow L.R. 220 in filing any supplemental papers for this hearing.

## III. AWARD OF COSTS AND ATTORNEY FEES.

■ As amended in November 1988, 28 U.S.C. § 1447(c) provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." A showing of "bad faith" is not required by this statute and attorney fees and costs should be awarded a plaintiff who successfully resists an improper removal unless to do so would result in injustice. *Moore v. Kaiser Foundation Hospitals, Inc.*, 765 F.Supp. 1464 (N.D.Cal. 1991).

■ In its "Notice of Removal," defendants state in ¶ 1: "The Court did not dismiss plaintiff's Title VII claim, and the plaintiff has not moved to dismiss that claim." Thus, defendants removed Walton II fully realizing that the Title VII claim was still pending in this court and that this court did not wish to exercise jurisdiction over the state law claims.

Plaintiff for quite legitimate reasons fully consistent with concepts of federalism prefers a state forum for his state claims. What cannot be understood is defendants' attempt to remove the action on the basis of a federal claim already pending in a previously pleaded complaint in the federal court. Defendants could not have expected the court to hear the identical claim twice. Nor did defendants believe the court would decide this time to retain jurisdiction over the state law claims. In their "Memorandum of Points and Authorities in Support of Removal," defendants admit they "expect the Court to exercise its discretion to remand the state law claims to state court" (page 5, lines 9–11). Defendants need not have brought Walton II before this court, and instead would better have served their goals by moving for a stay of the Title VII claim.

The California courts are entitled to adjudicate claims properly within their jurisdiction free of litigants yanking the rug from under those courts. Defendants' conduct bespeaks a lack of the due respect to which the state courts are entitled. Accordingly, plaintiff should be entitled to recover his attorney fees and costs and may seek them by submitting appropriate substantiation.

SO ORDERED.