195 F.3d 1107 (9th Cir. 1999)
 MIKE AUDETTE; MARCO BERBER; LON BERGSTROM; CHARLES BOX; JOHN BRUSHA; PHILLIP CARMAN; RICHARD CARROLL; CAROL DENNIS; AARON ERICKSON; KENNETH FROST; MIKE FLEURY; DAVID GODFREY; PAUL GODFREY; ELLIE HUNTSMAN; STEVE KINNAMAN; DAVID MICKELSON; DON PIERACCINI; RICHARD SHARP; GORDON SHIPMAN; DAN VLASTELICA; DENNIS ACKELY; PETE MANINECA, Plaintiffs-Appellants,
v.
INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION; LOCAL 24, INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION; PACIFIC MARITIME ASSOCIATION, Defendants-Appellees.
 No. 98-35324
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted September 15, 1999--Seattle, Washington
Filed November 1, 1999
 
 1
 [Copyrighted Material Omitted]
 
 
 2
 James E. Graham, Renton, Washington, for the plaintiffs-appellants.
 
 
 3
 Robert Remar, Leonard, Carder, Nathan, Zuckerman, Ross, Chin & Remar, San Francisco, California; Clifford D. Sethness, Lane Powell Spears Lubersky, Seattle, Washington; and Lawrence R. Schwerin, Schwerin Campbell Barnard,Seattle, Washington, for the defendants-appellees.
 
 
 4
 Appeal from the United States District Court Western District of Washington; Franklin D. Burgess, District Judge, Presiding. D.C. No. CV-97-05761-FDB
 
 
 5
 Before: Mary M. Schroeder and Robert R. Beezer, Circuit Judges, and William W Schwarzer,* Senior District Judge.
 
 SCHWARZER, Senior District Judge:
 
 6
 We must decide whether federal law preempts the claims of workers against their labor union and employers' association arising from an alleged breach of a settlement agreement allegedly motivated by retaliation and gender discrimination. Plaintiffs, who are longshore workers, allege that defendants breached the agreement by denying them registration as Class B workers under their collective bargaining agreement (CBA) in retaliation for a prior lawsuit and because of the gender of some of the plaintiffs, violating both the settlement agreement and Washington state antidiscrimination law. We affirm the district court's denial of the motion to remand as well as its judgment, holding the claims to be preempted byS 301 of the Labor Management Relations Act (LMRA) and barred by the six-month statute of limitations. See DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 162-63 (1983).
 
 FACTS AND PROCEDURAL HISTORY
 
 7
 The International Longshoremen's and Warehousemen's Union (ILWU) is the exclusive bargaining representative of longshore workers and marine clerks on the West Coast. Its affiliate, ILWU Local 24 (Local 24), represents workers employed in the port of Grays Harbor, Washington. Pacific Maritime Association (PMA) is an association of employers engaged in stevedoring and related services and a party to the Pacific Coast Longshore Contract Document with ILWU, the CBA. The CBA regulates the terms, conditions, and procedures for longshore work categories--casuals, identified casuals, B registered workers, and A registered workers.
 
 
 8
 In 1981, Eleanor Huntsman, a casual worker at Grays Harbor, filed an action against the PMA and Local 24 in state court alleging that she had been denied B registration on account of her gender in violation of Washington's antidiscrimination law. In 1982, the parties entered into the settlement agreement at issue, agreeing that "[w]hen B Registration is next granted to longshore persons in Grays Harbor, Ms. Huntsman shall not be denied B Registration . . . ." It further provided:
 
 
 9
 If such B Registration has not been held by September 1, 1984, Ms. Huntsman may request from [Joint Port Labor Relations Committee] JPLRC on behalf of all casuals a B Registration on 25 casuals. The JPLRC shall within thirty (30) days request such B Registration from the Coast or present in writing to each party to this Agreement and their attorneys nondiscriminatory, legitimate, business justification why the B Registration should not take place.
 
 
 10
 When Ms. Huntsman requested registration of twenty-five casuals in September 1984, the PMA and local employers refused. In fact, no B registration of casuals has taken place in Grays Harbor since the 1982 settlement.
 
 
 11
 In 1995, plaintiffs (including Huntsman), all casuals at Grays Harbor, filed an action against Local 24, the ILWU, and the PMA in federal court alleging breach of the duty of fair representation and of the collective bargaining agreement. Plaintiffs later amended the complaint to include state law claims for breach of the settlement agreement and of the implied covenant of goodfaith and fair dealing. The district court granted defendants' motion for summary judgment based on the six month statute of limitations governing actions under S 301 of the LMRA, and dismissed the state law claims without prejudice pursuant to 28 U.S.C. S 1367(c)(3).
 
 
 12
 In 1997, plaintiffs filed this action in state court based on the same facts as the dismissed federal action, alleging five causes of action: (1) Breach of settlement agreement and covenant of good faith and fair dealing; (2) promissory estoppel; (3) breach of fiduciary duties; (4) discrimination/retaliation; and (5) declaratory judgment. Defendants removed the action on the ground that the LMRA preempted the state law claims and moved for summary judgment. The district court denied the motion to remand and granted the summary judgment motion.
 
 
 13
 Subject matter jurisdiction arises under 28 U.S.C.SS 1331, 1367. We have appellate jurisdiction pursuant to 28 U.S.C. S 1291.
 
 DISCUSSION
 I. STANDARD OF REVIEW
 
 14
 We review a denial of a motion to remand a claim for want of removal jurisdiction de novo. See Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 996 (9th Cir. 1987). Similarly, we review summary judgment de novo and will affirm only if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of fact and the trial court correctly applied the substantive law. See id. Whether the finding of preemption was proper is a question of subject matter jurisdiction that is also reviewed de novo. See Stallcop v. Kaiser Found. Hosp., 820 F.2d 1044, 1048 (9th Cir. 1987).
 
 II. COMPLETE PREEMPTION[1]
 
 15
 "Only . . . actions that originally could have been filed in federal court may be removed to federal court by the defendant." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Absent diversity of citizenship (not present here), federal question jurisdiction is required. "The presence or absence of federal question jurisdiction is governed by the `well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Id. The plaintiff is the "master of the claim" and may avoid federal jurisdiction by "exclusive reliance on state law." Id. Under the corollary to that rule, however, a state common law claim will be converted into one stating a federal claim where the preemptive force of a federal statute is so extraordinary that it displaces any state law claim in the area. Complete preemption applies to cases raising claims preempted byS 301. "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Id. at 393. We must decide whether plaintiffs' claims fall within the area of state law completely preempted by S 301.
 
 
 16
 A. Breach of Settlement Agreement and of Covenant of Good Faith and Fair Dealing[2]
 
 
 17
 Plaintiffs' first cause of action alleges that defendants breached the settlement agreement by failing to register Huntsman and twenty-five casuals, failing to require the Joint Port Labor RelationsCommittee (JPLRC) to request B Registration from the Coast Committee, and failing to provide legitimate business justifications for why a B registration should not take place. It also alleges breach of the covenant of good faith and fair dealing because the PMA used a change in the Voluntary Travel provision of the CBA as a "ruse " to oppose B registration and because Huntsman was never informed of defendants' failure to require a request for a B registration.
 
 
 18
 Although the settlement agreement does not settle a grievance that arose under the CBA, cf. Jones v. General Motors Corp., 939 F.2d 380, 382-83 (6th Cir. 1991), and Davis v. Bell Atlantic-West Virginia, Inc., 110 F.3d 245, 24849 (4th Cir. 1997), its performance implicates various provisions of the CBA. The settlement agreement provides specifically that defendants may produce "non-discriminatory, legitimate, business justification why B registration should not take place." Determining whether such justification exists would necessarily implicate provisions of the CBA, such as provisions for the expansion of the Voluntary Travel provision under the CBA (as the complaint itself indicates), the policy of transferring workers from Limited Work Opportunity ports, and the authority of the JPLRC under the CBA to limit the number of workers in each category to conform to the volume of available work. Indeed, the settlement agreement specifically refers to CBA registration procedures and provides that disputes under the agreement will be resolved under the CBA's grievance procedure. Thus, determining whether a breach of the settlement agreement occurred would necessarily "require[ ] the interpretation of [the CBA]." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988).
 
 
 19
 Moreover, the subject matter of the settlement agreement--Class B longshore positions--is covered by the CBA. We have previously held that where the position in dispute is "covered by the CBA, the CBA controls and any claims seeking to enforce the terms of [an agreement] are preempted." Beals v. Kiewit Pac. Co. Inc., 114 F.3d 892, 894 (9th Cir. 1997). See also Young, 830 F.2d at 997-98 (alleged oral contract between employee and employer regarding reinstatement controlled by CBA since employee held position covered by collective bargaining agreement); Stallcop 820 F.2d at 1048 (alleged oral agreement made by employer in connection with employee's reinstatement was only effective as part of the collective bargaining agreement).
 
 
 20
 For the same reasons, plaintiffs' state law claim for breach of implied covenant of good faith and fair dealing is preempted. This covenant "derives from the contract [and are] defined by the contractual obligation of good faith, " and therefore are preempted to the same extent the breach of contract claim is. Allis-Chalmers Corp. v. Lueck , 471 U.S. 202, 218 (1985); see also Schlacter-Jones v. General Tel. of Cal., 936 F.2d 435, 440 (9th Cir. 1991) (holding claim for breach of implied covenant of good faith and fair dealing preempted by S 301); Young, 830 F.2d at 999-1000 (same).
 
 B. Promissory Estoppel
 
 21
 Plaintiffs' second cause of action is founded on promissory estoppel. But it alleges no more than that plaintiffs relied on the written settlement agreement. On appeal, plaintiffs proffer no argument that the promissory estoppel claim is subject to a different analysis than the contract claim. Hence, it is preempted for the same reasons.
 
 C. Breach of Fiduciary Duties
 
 22
 Plaintiffs' third cause of action alleges that "Defendants, because of their unique position and relationship to the Plaintiffs, and because of the obligations imposed upon them in the settlement agreement, owed a fiduciary duty to the Plaintiffs to jointly seek and obtain registration of the Plaintiffs as "B" longshoremen in the port of Grays Harbor." Plaintiffspoint to no state law which creates the "unique position and relationship" between them and defendants. In the context of the other facts alleged, the source of any unique relationship between the parties is the CBA. A cause of action that requires a court to ascertain whether the CBA in fact placed "an implied duty of care" on a union and the "nature and scope of that duty" involves the interpretation of the CBA and hence is preempted. International Brotherhood of Electrical Workers v. Hechler, 481 U.S. 851, 862 (1987).
 
 D. Retaliation/Discrimination
 
 23
 Plaintiffs' fourth claim alleges that defendants did not register them as B longshore workers in retaliation for Huntsman's lawsuit and because of the presence of two women among plaintiffs. They allege discrimination in violation of Washington state law. See Wash. Rev. CodeS 49.60.180 (prohibiting employers from discriminating on the basis of sex); S 49.60.190 (prohibiting labor unions from discriminating on the basis of sex); S 49.60.210 (prohibiting employers and labor unions from discriminating against a person who has opposed discriminatory practices or exercised his or her rights under the antidiscrimination laws); and S 49.60.220 (prohibiting aiding and abetting in violation of discrimination laws). The district court held this claim to be preempted by S 301 because "the defendants' alleged refusal to register would require interpretation of the settlement agreement and the CBA."
 
 
 24
 "The LMRA does not . . . preempt the application of a state law remedy when the `factual inquiry [under the state law] does not turn on the meaning of any provision of a collective bargaining agreement.' " Jimeno v. Mobil Oil Corp., 66 F.3d 1514, 1522 (9th Cir. 1995), quoting Lingle, 486 U.S. at 407 (holding S 301 did not preempt state law claim for physical disability discrimination in employment); Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 748 (9th Cir. 1993) (holding state law claim of discrimination based on national origin not preempted); Jackson v. Southern Cal. Gas Co., 881 F.2d 638, 644 (9th Cir. 1989) (holding state law claim of race discrimination not preempted).
 
 
 25
 The instant case does not involve a free-standing claim of discrimination. Rather, the claim turns on whether defendants' alleged failure to perform the settlement agreement was motivated by retaliation or discrimination. Under Washington discrimination law, an employer or union can refute a prima facie case of discrimination by offering a legitimate nondiscriminatory reason for their employment decision. See Grimwood v. University of Puget Sound, Inc., 753 P.2d 517, 521 (Wash. 1988) (age discrimination); see also Kuyper v. Washington, 904 P.2d 793, 795-96 (Wash. Ct. App. 1995) (gender discrimination). Here, resolution of the discrimination and retaliation claim turns on defendants' offer of a "legitimate nondiscriminatory reason" requiring interpretation of the collective bargaining agreement, as discussed above. Accordingly, this claim is preempted.
 
 
 26
 The judgment is AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.
 
 
 [1]
 Apart from attacking jurisdiction, plaintiffs also argue that the court's earlier dismissal without prejudice pursuant to 28 U.S.C. S 1367(c) of their state law claims in the 1995 action operates as res judicata, barring defendants from raising preemption in the present action. However, in the absence of a final judgment on the merits, res judicata does not arise. See, e.g., Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).
 
 
 [2]
 Our discussion of plaintiffs' state law claims excludes the alleged fifth cause of action for "declaratory judgment," because it merely seeks relief rather than stating a claim.