**Guy O'CONNER, Plaintiff,**

v.

**HILTON HAWAIIAN VILLAGE, et al., Defendants.**

**Civ. No. 89–00767 ACK.**

United States District Court, D. Hawaii.

Dec. 12, 1990.

Guy O'Conner, pro se.

Torkildson Katz Jossem Fonseca Jaffe & Moore, Robert S. Katz, Jeffrey S. Harris and Marybeth King Fentriss, Honolulu, Hawaii, for defendants.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### FACTS

On August 10, 1987, Defendant Hilton hired Plaintiff O'Conner as a Mini–Bar Porter on a temporary one-day basis, *i.e.*, as a "probationary employee." Hilton apparently continued to hire him on the same basis for seventeen additional days from August 11, 1987 to September 4, 1987. O'Conner states that Defendant Kapasalis, the Beverage Manager at Hilton, told him on August 10 that he was a "one-day hire" pending receipt of O'Conner's credit report. Plaintiff's Opp. Memo to Def's. Motion to Dismiss, p. 4. O'Conner claims that he was later told by Kapasalis on August 20, 1987, that he was in fact hired and that the one-day hire situation was "just a technicality" that had not been formally processed. *Id.*

O'Conner states that his immediate supervisor, Stephen Kina, told him on September 3, 1987, not to report to work the following day because O'Conner had motivation and attitude problems and that O'Conner was "not part of the family." *Id.* at 5. O'Conner reported to work anyway the next day, September 4. O'Conner met with the Food and Beverage Manager, Noel Trainor, and Trainor told O'Conner to take the rest of the day off and report for work the following day. *Id.* O'Conner states that he was then confronted and harassed by Ed Maiden, head of security, while O'Conner was in the employee locker room getting ready to leave. *Id.* O'Conner alleges that Maiden entered the locker room and began questioning O'Conner. Affidavit of Guy O'Conner, ¶ 4. Maiden then allegedly demanded to see O'Conner's identification, accused O'Conner of trespassing, blocked O'Conner's path, grabbed O'Conner when O'Conner tried to get by, and took O'Conner to Maiden's office for questioning. *Id.* at ¶ 5.

Hilton did not offer O'Conner further work. Hilton's stated reasons for not offering further work to O'Conner were his performance as a probationary employee and the results of his background check. On September 15, 1989, O'Conner filed a Complaint against Defendants in the Circuit Court of the First Circuit, State of Hawaii. The Complaint alleged that the Defendants "conspired to coerce, harass, threaten, and discriminate" against him "due to his union activity," resulting in his being wrongfully discharged from his employment with Defendant Hilton. On September 29, 1989, Defendants filed a timely Notice of Removal in this Court, requesting that O'Conner's action be removed from State court to federal court.

In April, 1990, Defendants moved for summary judgment. On August 6, 1990, this Court granted O'Conner leave to amend his Complaint and granted Defendants leave to amend their motion for summary judgment. O'Conner's Amended Complaint sets forth the following six counts:

—Count I is similar to the wrongful discharge claim set forth in O'Conner's original complaint, except that he no longer claims that Defendants discriminated against him and he no longer claims that Defendants' actions were due to O'Conner's union activities.

—Count II alleges that his discharge was a breach of an oral contract between the parties.

—Count III is similar to Count I in that it alleges "constructive, wrongful, and tortious discharge."

—Count IV alleges that Defendants' actions were a breach of the implied covenant of good faith and fair dealing.

—Count V is a claim that Defendants negligently or intentionally inflicted emotional distress upon Plaintiff.

—Count VI alleges that Hilton is vicariously liable for the alleged wrongs committed by its employees in Counts I–V.

Two motions are now before this Court. First, Plaintiff O'Conner moves this Court to remand this action to state court because his amended complaint no longer includes a federal question. Second, Defendants move to dismiss or, in the alternative, for summary judgment.

## DISCUSSION

### A. Motion for Remand

Defendants' Notice of Removal in this action states that this case was properly removable because O'Conner's original complaint alleged a violation of the Collective Bargaining Agreement (CBA) between Hilton and Local 5 of its employees' union. Defs.' Notice of Removal, ¶ 3. Defendants argued that the action was thus a federal question under § 301 of the Labor Management Relations Act of 1947 (LMRA). Plaintiff now argues that by amending his complaint to no longer assert that his discharge was due to union activities, the LMRA no longer is applicable to the case, and thus, no federal question remains. He therefore moves this Court to remand his case back to the state court.

Defendants argue that O'Conner's motion to remand should be denied for three reasons: First, the motion is untimely; second, removal is determined at the time of removal, not after subsequent amendments to the complaint; third, O'Conner's amended Complaint still states a claim for breach of a collective bargaining agreement under § 301 of the LMRA and is therefore preempted by federal law.

### 1. Timeliness of Motion

■ Magistrate Conklin established a motion deadline of September 4, 1990. O'Conner's motion for remand was filed on September 28, 1990, more than three weeks after the deadline. Defendants assert that this untimeliness is particularly egregious in light of the fact that O'Conner waited to file his motion to amend his complaint until one business day before the hearing of Defendants' motion for summary judgment

on the original Complaint. Defendants argue that O'Conner therefore waived any procedural objections to removal because the objections were not raised within 30 days of the initial removal petition, pursuant to 28 U.S.C. § 1447(c). O'Conner correctly argues, however, that this motion is one based upon whether subject matter jurisdiction exists, and, therefore, § 1447(c) allows remand to occur any time before final judgment.

### 2. Effect of Amended Complaint

The law is clear in the Ninth Circuit that a federal court has jurisdiction to retain and decide a state claim that is not independently removable. *Watkins v. Grover,* 508 F.2d 920, 921 (9th Cir.1974); *Murphy v. Kodz,* 351 F.2d 163, 167 (9th Cir.1965). However, if a plaintiff amends his complaint to allege purely state claims, a federal court is not obliged to exercise its power to hear the remaining state claims. *Price v. PSA, Inc.,* 829 F.2d 871 (9th Cir.1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988); *Swett v. Schenk,* 792 F.2d 1447, 1450 (9th Cir.1986). Thus, if this Court finds that O'Conner's amended complaint alleges only state claims, it is within this Court's discretion to either retain jurisdiction over the case or remand the case to state court.

### 3. Preemption of Amended Complaint

Defendants argue that, even if this Court has the discretion to remand a complaint with only state claims, such discretion cannot be applied to this case because O'Conner's Amended Complaint is still preempted by federal law. Defendants assert that Counts I–V of the Amended Complaint require an analysis and interpretation of the collective bargaining agreement.

Ordinarily, a defendant may remove a suit to federal court only if the suit could have been brought there originally. 28 U.S.C. § 1441(a) (1988); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Under the well-pleaded complaint rule, federal jurisdiction exists only when a federal question is presented on the face of a plaintiff's

complaint. *Caterpillar*, 107 S.Ct. at 2429. A federal defense may not form the basis of federal jurisdiction, even if both parties concede that the defense is the only question truly at issue. *Id.* (citing *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 12, 103 S.Ct. 2841, 2847–48, 77 L.Ed.2d 420 (1983)).

The complete preemption doctrine, however, provides an exception to the well-pleaded complaint rule. *Caterpillar*, 107 S.Ct. at 2430. That doctrine provides:

> The pre-emptive force of a statute [may be] so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim....

*Caterpillar*, 107 S.Ct. at 2430 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987) (footnote omitted).

Section 301 of the LMRA has such an "extraordinary" preclusive effect.[1] *Stikes v. Chevron USA, Inc.*, 914 F.2d 1265 (9th Cir.1990) (citing, *inter alia, Caterpillar*, 107 S.Ct. at 2430). Its preemptive force is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement. *Id.* at 1267–68 (citing *Franchise Tax Bd.*, 463 U.S. at 23, 103 S.Ct. at 2853 (1983)). Section 301 preempts state law claims which are founded on rights created by a CBA and state law claims which are substantially dependent on analysis of a CBA. *Stikes* at 1267–68 (citing, *inter alia, Caterpillar*, 482 U.S. at 394, 107 S.Ct. at 2430).

To determine whether O'Conner's state law claims depend upon an interpretation of the CBA, this Court must examine the elements of the claims to ascertain if any of the elements require a construction of

the agreement. *Stikes* at 1267–68 (citations omitted). The Ninth Circuit Court of Appeals case, *Young v. Anthony's Fish Grottos, Inc.*, was decided after *Caterpillar* and involved facts similar to those of the instant case. 830 F.2d 993 (9th Cir. 1987). In *Young*, the plaintiff was a probationary employee and alleged that a manager of her employer's restaurant promised to employ her on the same terms as her previous employment with the restaurant, subject to discharge only for just cause. *Id.* at 996. The plaintiff was later discharged and brought claims of, among others, breach of contract, wrongful discharge, breach of implied covenant of good faith and fair dealing, and intentional and negligent infliction of mental distress. *Young* at 993. The case was removed to federal court and the plaintiff moved for remand to state court. The federal district court refused to remand and the Court of Appeals for the Ninth Circuit affirmed. *Id.* at 995.

In *Young*, the court held that the district court properly looked beyond the facts of the complaint to determine whether the contract claim was in fact a § 301 claim for breach of a CBA "artfully pleaded" to avoid federal jurisdiction. 830 F.2d at 997 (citations omitted). The court reasoned that the subject matter of Young's contract was a job position covered by the CBA. *Id.* at 997. Because any independent agreement of employment concerning that job position could be effective only as part of the CBA, the CBA controlled and the contract was preempted. *Id. See also Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283 (9th Cir.1989) (employee's independent contract preempted by a CBA).

■ In contrast, the court noted the Supreme Court's reasoning in *Caterpillar* that a breach of contract claim concerning a job not governed by a CBA could be effective independent of the CBA and is therefore not completely preempted. *Id.* at 998 (citing *Caterpillar*, 107 S.Ct. at 2430–

---

[1] Section 301(a) of the Labor Management Relations Act provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties....

32 & 2431 n. 9). O'Conner argues that the CBA was not in effect when he was employed and that his job as mini-bar porter was newly created during the summer of 1987. He asserts, therefore, that his contract was not governed by the CBA. Those assertions are erroneous. The preamble of the CBA states that the CBA was "made and entered into as of the 3rd day of December, 1987." *See* Def's. Motion for Summary Judgment, Exh. A, p. 1. However, § 2 of the CBA provides for retroactive effect of the CBA, stating that "[t]his Agreement shall remain in effect from March 1, 1987, until and including February 28, 1990." *Id.* Thus, the Agreement covers the time in which O'Conner worked at Hilton. The CBA was agreed to on or about March 2, 1987, and the mini-bar porter position was included and a wage rate for that position was negotiated and agreed upon at that time. Supplemental Affidavit of Cheryl Logan, Director of Personnel for Hawaii Hilton Village. Section 21.3.C. at p. 17 of the CBA defines "On–Call Employees" to include those workers not on a regular schedule, and p. 57 of the CBA sets out the pay scale for "Mini-bar Porter." Thus, the CBA governs O'Conner's position. Under the Ninth Circuit's reasoning in *Young* and *Chmiel,* O'Conner's contract claim (Count II) is completely preempted by § 301 of the LMRA.

Count I of the Amended complaint is a claim for wrongful discharge and is similarly preempted by § 301 of the LMRA because it would require the interpretation and application of the CBA. The court in *Young, supra,* considered whether a claim for wrongful discharge was preempted under § 301. The court stated that a claim is preempted if it is not based on any genuine state public policy. *Young,* 830 F.2d at 1001–02. Otherwise, virtually any wrongful discharge claim could be recast as a public policy claim exempt from preemption. *Id.* Here, O'Conner fails to identify any state statute or other relevant Hawaii public policy which is violated by his alleged wrongful discharge.

Count III of the Amended Complaint alleges that O'Conner's dismissal was a "constructive, wrongful, and tortious dis-charge." This seems to be a restatement of the claim asserted in Count I and, thus, is similarly preempted.

O'Conner's tort claim for breach of an implied covenant of good faith and fair dealing (Count IV) is also preempted by § 301. The court in *Young* found such a claim to be preempted because that claim can only be disposed of by referring to the terms of the collective bargaining agreement and is "inextricably intertwined with the interpretation of the CBA." *See Young,* 830 F.2d at 999–1001.

■ Count V alleges intentional or negligent infliction of emotional distress. The Ninth Circuit Court of Appeals has sometimes held that § 301 does not preempt such claims. Preemption turns on whether the CBA would have to be construed. In *Tellez v. Pacific Gas and Elec. Co., Inc.,* 817 F.2d 536 (9th Cir.1987), the Ninth Circuit Court of Appeals held that a CBA which was silent on work conditions, and vague on disciplinary formalities, did not cause § 301 to preempt an emotional distress claim based on the distribution of suspension letters to employees. 817 F.2d 536, 539 (9th Cir.1987). The court found that the CBA in that case would not need to be examined or interpreted in order to address the emotional distress claim. *Id.* In contrast to *Tellez,* the Ninth Circuit has held that § 301 preempts emotional distress claims in other circumstances. In *Truex v. Garrett Freightlines, Inc.,* 784 F.2d 1347 (9th Cir.1985), the plaintiff's complained that they suffered emotional distress as a result of warning letters sent to them by their supervisors. 784 F.2d at 1350. The court found that the emotional distress claim would require a determination of whether the letters differed from those given to other employees, and whether the surveillance complained of was unusual. *Id.* at 1351. Because those procedures were covered by the CBA, the court held that the claim was inextricably intertwined with a construction of the CBA, and thus was not shielded from § 301 preemption. *Id.* *See also, Jackson v. Southern California Gas Co.,* 881 F.2d 638, 645–46

(9th Cir.1989); *Young, supra,* 830 F.2d at 1002.

Defendants argue that the claim arises out of the same conduct which formed the basis of the contract claim, and is therefore preempted by § 301. O'Conner argues that this claim arose out of the actions of Ed Maiden, the head of security at Hilton who allegedly harassed O'Conner in the Hilton employee locker room, and that such actions are separate from the actions which gave rise to Counts I–IV. However, as O'Conner asserts in Count VI of his Amended Complaint, the actions of Ed Maiden and other Hilton employees were in the course and scope of their employment with Hilton at the time they allegedly inflicted the described injuries upon O'Conner. Those actions all arose out of the discharge of O'Conner. Count V of the Amended Complaint also states that the emotional distress claim was the direct and proximate result of "Defendants' " actions toward O'Conner—the same actions on which the other claims in the complaint are based. Further, paragraph 11 of O'Conner's supplemental affidavit states that he told medical personnel that he was consulting them because of the actions of Ed Maiden *and others* at Hilton. Section § 301 preempts emotional distress claims when the claims arise out of the same conduct as contract claims under the CBA. *Young,* 830 F.2d at 1002.

Even if this Court assumes that the emotional distress claim arose solely out of Ed Maiden's actions and had nothing to do with the other actions which O'Conner complains of—the emotional distress claim might require a determination of the CBA. The scope of Maiden's duties were toward employees covered by the CBA, whether the actions were unusual in comparison to the supervision of other employees, and whether that conduct comported with the disciplinary sections of the CBA would have to be considered. In the present case, the CBA contains an entire section regarding discipline and discharge. However, it is not clear that Ed Maiden's conduct could be characterized as disciplinary measures or supervision. Viewing the facts in the light most favorable to O'Conner, the al-

leged conduct had more to do with general security of the premises than it did with personnel supervision or discipline. There appears to be no section in the CBA covering procedures for such security checks. Thus, O'Conner's emotional distress claim may not require interpretation of the CBA and, therefore, may be exempt from § 301 preemption.

■ However, even if O'Conner's claim for emotional distress results from conduct of Ed Maiden that does not involve the interpretation of the CBA in any way and is therefore not preempted by § 301, the emotional distress claim still fails to state a claim upon which relief can be granted. It is clear that the claim is preempted by the Hawaii Workers Compensation Law, Chapter 386, HRS. The courts have held that emotional distress claims are barred by that statute which provides exclusive remedies for "personal injury ... arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment." H.R.S. § 386–3 (1985). *See Courtney v. Canyon Television & Appliance Rental,* 899 F.2d 845, 851–52 (9th Cir.1990); *Morishige v. Spencecliff Corp.,* 720 F.Supp. 829 (D.Haw.1989); *Howard v. Daiichiya–Love's Bakery, Inc.,* 714 F.Supp. 1108 (D.Haw.1989); *Leong v. Hilton Hotels Corp.,* 1989 WL 103414, p. 9, 50 FEP 730 (D.Haw.1989). The Hawaii Supreme Court has held that the statute provides coverage for injuries so long as there is a causal connection between the injury and the incidents or conditions of employment, regardless of where or when the injury took place. *Chung v. Animal Clinic, Inc.,* 63 Haw. 642, 648–49, 636 P.2d 721, 725–26 (1981). The Hawaii Supreme Court has also stated that HRS § 386–5 was a clear expression of legislative intent to absolve the employer of *all* liability, except that imposed by statute. *Hanagami v. China Airlines, Ltd.,* 67 Haw. 357, 688 P.2d 1139, 1144 (1984) (per curiam). Further, the Hawaii Supreme Court has held that "psychogenic disability precipitated by the circumstances" of employment is a work-related injury within the meaning of the workers

compensation statute. *Royal State Nat'l Ins. C. v. Labor & Indus. Relations Appeal Bd.*, 53 Haw. 32, 38, 487 P.2d 278, 282 (1971).

In this case, O'Conner admits—in fact asserts affirmatively—that Ed Maiden's actions were in the scope of Maiden's employment. Amended Complaint, ¶ 28. There is no doubt that there is a causal connection between O'Conner's alleged emotional distress injury inflicted by security head Maiden in the Hilton employee locker room and the incidents and conditions of his employment at Hilton. Therefore, because the workers compensation law clearly was meant to absolve the employer of all liability—including emotional distress claims such as O'Conner's—Count V is preempted by the Hawaii Workers Compensation laws.

Count VI simply alleges the employees involved in this incident were acting within the scope of their employment, and, thus, respondeat superior applies to Counts I–V. Thus, it does not state any additional substantive claims.

Even when federal law preempts state law, a state law claim may not be removed unless federal law also supplants it with a federal claim. *Hunter v. United Van Lines*, 746 F.2d 635, 640–43 (9th Cir.1984), *cert. denied*, 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985). *See also Young, supra*, at 997. The United States Supreme Court, however, has rejected the argument that the federal claim must provide the plaintiff with a remedy. *Caterpillar, supra*, 107 S.Ct. at 2429 n. 4. Similarly, the removal is not defeated because a federal defense completely bars the federal claim. *Young*, 830 F.2d at 998–99. Thus, this Court's jurisdiction over claims preempted and supplanted by a federal claim under § 301 is proper, regardless of whether O'Conner has a federal remedy for the preempted claims.

**B. *Defendants' Motion To Dismiss or For Summary Judgment***

Defendants bring their motion pursuant to Federal Rules of Civil Procedure 12(b)(6)

and 56(b) and asks this Court to dismiss or enter summary judgment against all counts of O'Conner's First Amended Complaint. Because Defendants have attached to their motion matters outside of the pleadings,[2] this Court treats their motion as one for summary judgment. Fed.R.Civ.P. 12(b)(6). All parties have had ample time to respond to the matters outside of the pleadings.

**1. Summary Judgment Standard**

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Electrical. Serv. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.1987). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.* At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an

---

**2.** Defendants have attached a copy of the Master Hotel Agreement between H.E.R.E. Local 5 and the Council of Hawaii Hotels (Council), and affidavits of representatives of Hilton and the Council.

otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987), *citing, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, the question of whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis original), *citing, Matsushita, supra,* 475 U.S. at 587, 106 S.Ct. at 1356. Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services,* 809 F.2d at 630–31.

2. Plaintiff's Claims

As discussed *supra,* Counts I, II, III, and IV are completely preempted by § 301 of the LMRA. Count V may not be preempted by § 301 if this Court assumes the facts in the light most favorable to plaintiff O'Conner. However, even if § 301 does not preempt Count V, Count V is preempted by the Hawaii Workers Compensation statute. Count VI does not state any new

claim, but merely alleges that respondeat superior applies to claims I–V. Thus, as a matter of law, plaintiff's claims fail and summary judgment should be entered for Defendants as to all Counts in the amended complaint. *See Young,* 830 F.2d at 1002.

There is no reason to grant O'Conner leave to amend his complaint to attempt to assert a valid federal cause of action under the CBA. The general rule is that "a bargaining unit employee may not bring an action for breach of the collective bargaining agreement unless he has exhausted the contractual grievance procedures." *Jackson v. Southern California Gas Co.,* 881 F.2d 638, 646 (9th Cir.1989). An employee may be excused from complying with the contractual grievance procedure in two situations. First, an employee need not exhaust his grievance procedures when the employer has repudiated the procedures. *Beriault v. Local 40, Super Cargoes & Check. of I.L. & W.U.,* 501 F.2d 258, 262, n. 3 (9th Cir.1974). Second, an employee may be excused from exhausting the grievance procedures when the union's breach of its duty of fair representation prevented the employee from exhausting those remedies. *Jackson, supra,* 881 F.2d at 646.

O'Conner does not claim that Hilton repudiated the grievance procedures. Neither does O'Conner allege a claim of breach of duty of fair representation in his complaint or name the union as a defendant. To show such a breach, O'Conner must show that the Union acted arbitrarily or discriminatorily by failing to process his grievance. *Dutrisac v. Caterpillar Tractor Co.,* 749 F.2d 1270, 1272 (9th Cir.1983). O'Conner's affidavit states only that he went to the union office to seek redress, but his "attempts were frustrated." It is not surprising that O'Conner felt his attempts were frustrated. Section 21.2 of the CBA states that a probationary employee, such as O'Conner, "may be terminated at the discretion of the Employer and such termination shall not be subject to the Grievance and Arbitration provision of Section 18." Thus, by definition, O'Conner had no grievance procedures available to

# 1552

him and the union could not have breached a duty of fair representation to him regarding his dismissal.[3]

It would seem logical that one who is not subject to the grievance procedures of a CBA has no burden to exhaust those procedures and could file a CBA claim directly in federal court. However, the Ninth Circuit law holds otherwise. In *Hollins v. Kaiser Foundation Hospitals,* 727 F.2d 823 (9th Cir.1984), the court held that a district court had no jurisdiction over a probationary employee's CBA claim when the CBA provided probationary employees with no recourse to the CBA grievance procedures. 727 F.2d at 825 & n. 2. The CBA claims of such probationary employees are intended to be made nonadjudicable by the CBA. *Id.* at 825, n. 2 (citing Feller, *A General Theory of the Collective Bargaining Agreement,* 61 Cal.L.Rev. 663, 793 (1973)). Federal law recognizes that a union may waive the employee's contractual rights. *Young, supra,* 830 F.2d at 998. Thus, as a probationary employee, O'Conner could be fired at will and has no claim under the CBA.

## CONCLUSION

Counts I–IV of O'Conner's amended complaint require interpretation of the CBA and are thus preempted by § 301 of the LMRA. *Young, supra.* Section 301 may also preempt Count V. However, construing the facts in the light most favorable to O'Conner, there exists a material issue of fact regarding whether Maiden's actions were connected with O'Conner's dismissal and whether those actions would require an interpretation of the CBA. However, even if § 301 does not preempt Count V, the claim still fails to state a claim upon which relief can be granted because it is preempted by the Hawaii Workers Compensation laws.

Plaintiff, as a probationary employee, failed to exhaust the grievance procedures in the CBA, notwithstanding the fact that

he had no access to those procedures. *Hollins, supra.* His contractual rights were waived and he was subject to being fired at will. Thus, there is no way for Plaintiff to amend the complaint to allege a violation of the CBA.

Plaintiff's motion to remand is DENIED. Defendants' motion for summary judgment is GRANTED as to all Counts of Plaintiff's Amended Complaint.

IT IS SO ORDERED.

*Southern California Gas Co.* 881 F.2d 638, 646 (9th Cir.1989) (citing *Del Costello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 169–70, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1983).

---

**3.** Even if O'Conner could somehow make out a case for such a breach of the Union's duty of fair representation, Defendants argue that it would be barred by the six month statute of limitations for such actions. *See Jackson v.*